UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THE UNITED STATES OF AMERICA                    17-CR-202-EAW-MJR

  -v-               REPORT, RECOMMENDATION
GONZALO VELAZQUEZ CABRERA a/k/a Bebé, and ORDER
ORLANDO LANZO-MANSO a/k/a Negrito,
JOSUE DIAZ RODRIGUEZ,
RAUL ORTIZ a/k/a Gaspar,
EUNHE CHOI,

       Defendants.



This case has been referred to the undersigned by the Hon. Elizabeth A. Wolford pursuant to 28 U.S.C. §636(b)(1) for all pre-trial matters and to hear and report upon dispositive motions.  (Dkt. No. 2).

## BACKGROUND

On October 26, 2017, a federal grand jury in the Western District of New York returned a nine-count indictment (the "Indictment") against Gonzalo Velazquez Cabrera a/k/a Bebe, Orlando Lanzo-Manso a/k/a Negrito, Josue Diaz Rodriguez a/k/a Casco, Raul Ortiz a/k/a Gaspar, and Eunhe Choi.  (Dkt. No. 1).  Count 1 charges Cabrera, Lanzo-Manso, Rodriguez and Ortiz with conspiracy to distribute heroin, cocaine, and cocaine base from March 2015 until in or after December 2015 (in violation of Section 846 of Title 21 of the United States Code); Count 2 charges Cabrera, Lanzo-Manso, Rodriguez and Ortiz with possession of firearms in furtherance of drug trafficking crime from March 2015 until in or after December 2015 (in violation of Sections 924(c)(1)(A)(i) and 2 of Title 18 of the United States Code); Count 3 charges Cabrera with discharge of a firearm in furtherance of drug trafficking crime on or about August 26, 2015 (in violation of Section 924(c)(1)(A)(iii) of Title 18 of the United States Code); Count 4 charges Cabrera and

Lanzo-Manso with discharge of a firearm in furtherance of drug trafficking crime on or about August 27, 2015 (in violation of Sections 924(c)(1)(A)(iii) and 2 of Title 18 of the United States Code); Count 5 charges Cabrera with discharge of a firearm in furtherance of drug trafficking crime on or about August 28, 2015 (in violation of Section 924(c)(1)(A)(iii) of Title 18 of the United States Code); Count 6 charges Rodriguez and Ortiz with possession with intent to distribute heroin on September 4, 2015 (in violation of Sections 841(a)(1) and 841(b)(1)(C) of Title 21 of the United States Code and Section 2 of Title 18 of the United States Code); Count 7 charges Rodriguez and Ortiz with maintaining drug-involved premises at 610 East Delavan Avenue, Buffalo, New York on September 4, 2015 (in violation of Section 856(a)(1) of Title 21 of the United States Code and Section 2 of Title 18 of the United States Code); Count 8 charges Cabrera, Lanzo-Manso, and Choi with maintaining drug-involved premises at 321 West Delavan Avenue, Buffalo, New York from August 2015 until in or after December 2015 (in violation of Section 856(a)(1) of Title 21 of the United States Code and Section 2 of Title 18 of the United States Code); and Count 9 charges Choi with material false statement on or about December 19, 2015 (in violation of Section 1001(a)(2) of Title 18 of the United States Code).  (Dkt. No. 1).

On March 12, 2018, defendants Cabrera, Lanzo-Manso, Rodriguez, and Choi filed omnibus discovery motions.[1]  (Dkt. Nos. 47-50).  In addition, Rodriguez moved to suppress physical evidence obtained during a search of 610 East Delavan Avenue, Buffalo, New York.  (Dkt. No. 48).  The Government responded to those motions on March 30, 2018 and filed its own motions for reciprocal discovery.  (Dkt. Nos. 51-54).  Defendant

---

[1] Defendant Raul Ortiz has not filed any pretrial motions.

Lanzo-Manso filed a reply to the Government's response on April 11, 2018.  (Dkt. No. 55).  After hearing oral argument on May 8, 2018, the Court ordered the Government to produce additional discovery material to defendants.  (Dkt. No. 65).  A status conference was held on June 11, 2018, at which time defendants were given two weeks to file supplemental motions based upon the new information.  (Dkt. No. 90). On June 25, 2018, Cabrera filed a motion for a suppression hearing as to statements he made after his arrest on October 27, 2017.  (Dkt. No. 92).  The Government filed a response on July 9, 2018. (Dkt. No. 98).  On July 12, 2018, Cabrera moved to withdraw his motion for a suppression hearing.  (Dkt. No. 99).  The Court granted Cabrera's motion to withdraw his request for a suppression hearing, and deemed the remainder of defendants' motions submitted on July 13, 2018.  (Dkt. No. 101).

## DISCUSSION

The Court will first address Rodriguez's motion to suppress physical evidence before turning to defendants' non-dispositive omnibus discovery requests and the Government's request for reciprocal discovery.

### _Rodriguez's Motion to Suppress Evidence From 610 East Delavan Avenue_

On September 3, 2015, Buffalo City Court Judge Craig D. Hannah signed a warrant authorizing the search of 610 East Delavan, Lower, Buffalo, New York ("610 East Delavan") as well as a grey Acura identified by license plate and registration number. (Dkt. No. 55-2, pgs. 2-3).  Detective John Garcia of the Buffalo Police Department completed an affidavit in support of the warrant application which stated that 610 East Delavan was occupied by "Casco", the alias attributed to Rodriguez in the Indictment, and "Gaspar", the alias attributed to Ortiz in the Indictment.  (_Id._ at pgs. 4-5).  The warrant and

affidavit described Casco as a Hispanic male between the ages of 30 and 35, 5'4 in height, and 150 pounds. (*Id.*). Garcia swore that a confidential informant observed Casco and Gaspar in the possession of firearms and also observed heroin and firearms at 610 East Delavan between August 3, 2015 and September 3, 2015. (*Id.*). The warrant application was also supported by the informant's *in camera* testimony to Judge Hannah. (*Id.*). The Government gave the Court, but not the defense, an audio recording of the informant's testimony.[2]

Rodriguez seeks to suppress evidence obtained from the execution of the search warrant.[3] (Dkt. No. 48, pgs. 16-17). Rodriguez argues that the information provided by the informant in support of the warrant was "defective, deficient and misleading." (*Id.*). The basis for Rodriguez's claim is that the informant identified him as a "light skinned Hispanic male who was approximately 5'4" when he is actually "an average size male standing approximately 5'11." (*Id.*). Rodriguez also requests a hearing and disclosure of the informant's *in camera* testimony before Judge Hannah. (*Id.*).

Upon a challenge to a probable cause finding made in a search warrant, a reviewing court must give deference to the issuing judge. *Illinois v. Gates*, 462 U.S. 213, 236 (1969). The court is not to conduct a *de novo* review nor is it to "interpret[] affidavit[s] in a hypertechnical, rather than a commonsense, manner." *Id.* Instead, the role of a reviewing court "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 238 (internal citations omitted). To that

---

[2] The Court has transferred the audio recording of the informant's testimony to a disk and has filed that disk under seal in connection with the instant Report, Recommendation and Order.

[3] Rodriguez submitted an affidavit in support of his standing to contest the search at 610 East Delavan. (Dkt. No. 63). Therein, he asserts that his girlfriend resided there, that he was a frequent overnight visitor to the apartment, and that he kept clothing and other personal items such as documents and paystubs there. (*Id.*). Rodriguez further asserts that when staying at the apartment he would lock the door to exclude others. (*Id.*).

end, warrant affidavits are entitled to "a presumption of validity." *Franks v. Delaware*, 438 U.S. 154, 171 (1978).  The Supreme Court has held that a defendant is entitled to an evidentiary hearing with respect to the validity of a search warrant only if they can make a substantial preliminary showing that: (1) the warrant affidavit contained a false statement; (2) the false statement was included intentionally or recklessly; and (3) the false statement was integral to the probable cause finding.  438 U.S. at 155-56.

No such showing has been made here.  The Court has reviewed the informant's *in camera* testimony to Judge Hannah and discloses, without revealing the identity of the informant or the remainder of the testimony, that the informant testified that Casco is a Hispanic male, that he is in his early 30's, that he weighs approximately 150 pounds and that he is 5'7 or 5'8 in height.  Defendant describes himself as approximately 5'11 in height or an "average sized male", which is within a few inches of the height provided by the informant during the testimony.  While the statement in the warrant and affidavit that Casco is 5'4 in height may differ from the informant's *in camera* testimony and defendant's description of himself, it is not a false or misleading statement sufficient to necessitate a *Franks* hearing.  Instead, it is a "minor inconsistenc[y] [that] does not undermine the existence of probable cause."  *United States v. Martin*, 157 F.3d 46, 52 (2d Cir. 1998) (minor errors in a search warrant affidavit as to the name of defendant's business and its specific address were insufficient to defeat a probable cause finding).  *See also United States v. Wells*, 88-87-01, 1989 U.S. Dist. LEXIS 17451 (Dt. Ct. Jan, 30, 1989) (description of an electrical service box as "very large" and a chimney as "large" in a warrant affidavit, where defendants argued they were standard size was not a false or misleading statement sufficient to make the requisite showing for a *Franks* hearing).

Moreover, false statements by an informant, whether they are purposeful or made in error, are insufficient to warrant a *Franks* hearing when there has been no showing that the statements were included intentionally or recklessly by the affiant. In *United States v. Smith*, the Second Circuit held that a probable cause finding in a search warrant was not undermined because the informant described the defendant as 5'5 after the first narcotics purchase, then described the defendant as 5'10 after the second purchase, and stated that the defendant was Jamaican when he was actually a resident of Guyana. 9 F.3d 1007, 1014 (2d Cir. 1993). The Second Circuit noted that "[t]he rule in this circuit is that as long as the applicant for the warrant accurately represents the information provided by an informant, probable cause is not defeated because the informant erred, or even lied, in his description of events." *Id.* Here, the record is bereft of evidence that Detective Garcia acted in bad faith or that the statement was included intentionally or recklessly. Indeed, the description of Rodriguez's height in the warrant and affidavit does not bolster the probable cause contained in the application. Thus, it would strain credulity to conclude that this information was provided to mislead the issuing magistrate.

Likewise, the fact that the statement about defendant's height in the warrant and affidavit was not necessary to the finding of probable cause provides an additional, independent basis to deny the request for a *Franks* hearing. The Second Circuit has held that "[i]f, after setting aside the allegedly misleading statements or omissions, the affidavit, nonetheless, presents sufficient information to support a finding of probable cause, the district court need not conduct a *Franks* hearing." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998). A search warrant issued by an impartial magistrate is presumptively valid. *Smith*, 9 F.3d at 1012. Where, as here, the Court is reviewing the

probable cause determination of an independent magistrate, it asks solely "whether the issuing judicial officer had a substantial basis for the finding of probable cause." *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993). Doubts regarding the existence of probable cause should be resolved in favor of upholding the search warrant. *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983). Applying this standard of review to the *in camera* testimony at issue in this case, but without further disclosing the contents of the testimony, the Court finds that Judge Hannah had a substantial basis to find that evidence of criminality, specifically firearms and narcotics, would be found at 610 East Delavan. The Court further finds that the description of Rodriguez's height in the warrant and affidavit is immaterial to the probable cause finding. Moreover, any minor inconsistency or error as to Rodriguez's height does not negate the reliability of the informant or the informant's basis of knowledge. As indicated above, the informant gave a predominately accurate physical description of Rodriguez during the *in camera* testimony. Further, the informant provided in-person testimony, testified on the basis of personal knowledge, and was questioned in detail by Judge Hannah about what they observed at the residence and the basis of their knowledge. The Second Circuit has concluded that an informant's testimony under oath is "significantly more reliable" than other informant information, because the testifying informant faces the sanction of a perjury prosecution. *United States v. Hernandez*, 85 F.3d 1023, 1028 (2d Cir. 1996) ("We think that such a detailed eye-witness report of a crime is self-corroborating; it supplies its own indicia of reliability.") (internal citations omitted) *See also United States v. Howard*, 12-CR-00084, 2013 U.S. Dist. LEXIS 11974 (WDNY Jan. 2, 2013) (finding no basis to invalidate a search warrant based upon the informant's credibility, in part, because the

informant appeared in person before the issuing judge and the judge had an opportunity to evaluate the informant's credibility.).  For these reasons, the Court recommends that Rodriguez's request for a *Franks* hearing and the suppression of evidence be denied.[4]

The Court now turns to Cabrera's, Lanzo-Manso's, Rodriguez's, and Choi's outstanding omnibus discovery motions and the Government's motion for reciprocal discovery.  The Court's rulings are as follows.

### Motions for Joinder

Each defendant has moved to join in the discovery motions made by his or her co-defendants.  (Dkt. No. 47, pg. 23; Dkt. No. 48, pg. 20; Dkt. No. 49, pg. 4; Dkt. No. 50, pg. 5).  The Government opposes joinder on the basis that it has not been given sufficient notice.  The majority of the discovery issues raised herein apply to all defendants, and defendants have made numerous overlapping requests.  The Court has thoroughly reviewed the papers submitted in this matter and finds that the Government has had an opportunity to substantively respond to all of the arguments made by defendants, and that joinder would not prejudice the Government.  The request for joinder is granted with the further directive and findings that the decisions made by this Court as to each defendants' motions shall also be deemed a finding and order as to all other defendants in this case, to the extent relevant.  Therefore, in the discussion below defendants

---

[4] The Court denies Rodriguez's request for disclosure of the *in camera* testimony before Judge Hannah. The warrant affidavit requests that the informant's identity be kept secret because there is a fear that disclosure would jeopardize the informant's safety or usefulness at a later date.  (Dkt. No. 55-2, pg. 4).  In light of the Court's findings that there is no basis for a *Franks* hearing and that the warrant was supported by probable cause, the Government's interest in protecting the identity of the informant outweighs defendant's need for disclosure.  *See United States v. Salteras*, 301 F. Supp. 2d 305, 307 (SDNY 2004) (denying disclosure of unredacted search warrant application where the Government's interest in non-disclosure was high and the defendant's need for disclosure was low); *United States v. Pennick*, 17-CR-15, 2018 U.S. Dist. LEXIS 106754, *10 (WDNY Feb. 27, 2018) (denying request for informant's testimony where disclosure would jeopardize the informant's safety and, given the existence of probable cause, defendant's interest in reviewing the testimony was minimal).

Cabrera, Lanzo-Manso, Rodriguez and Choi will be referred to collectively as "defendants."  In the event an issue or motion applies only to one or more specific defendant, the defendant or defendants will be expressly named.

### Rule 16 Discovery

Defendants move for discovery and inspection pursuant to Federal Rule of Criminal Procedure 16.  (Dkt. No. 47, pgs. 4-13; Dkt. No. 48, pgs. 7-8; Dkt. No. 49, pg. 3; Dkt. No. 50-1, pgs. 3-9).  Rule 16(a) requires the Government to disclose certain evidence and information upon request of a defendant.  While Rule 16 was intended to provide for liberal discovery, a defendant is not entitled to discovery of "the entirety of the government's case against him."  *United States v. Percevault*, 490 F.2d 126, 130 (2d Cir. 1974).  Rule 16 provides that a defendant is entitled to the following: (1) a defendant's written, recorded or oral statements in the possession of the government; (2) the defendant's prior record; (3) documents, objects, books, papers, photographs, etc. that will be used during the government's case-in-chief; (4) reports of examinations or tests; (5) and information about expert witnesses in accordance with Federal Rules of Evidence 702, 703 and 705.  *See* Fed. R. Crim. P. 16(a)(1).  Rule 16 specifically exempts from disclosure "reports, memorandum, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case."  *See* Fed. R. Crim. P. 16(a)(2).

In their omnibus motions, defendants requested extensive Rule 16 discovery material including, *inter alia*, any statements by defendants and co-conspirators, laboratory reports or examinations with respect to firearms or narcotics, fingerprint analysis reports, tangible evidence such as photographs, videotapes and documents, any

intercepted communications, defendants' criminal records, and any relevant documents or photographs used in identification procedures. Defendants also requested copies of all search warrants, oral applications or affidavits in support of search warrant applications, search warrant inventory returns and any other relevant documents or photographs related to searches. The Government responded that it had complied with all of the requirements of Rule 16. Lanzo-Manso filed a reply in opposition, arguing that the Government had not fulfilled its requirements under Rule 16. (Dkt. No. 55). Specifically, Lanzo-Manso indicated that the Government failed to provide laboratory reports related to firearms alleged to have been used or possessed by defendants and photographs shown by the FBI to a witness on November 30, 2016. (Dkt. No. 55-3, pg. 2). Lanzo-Manso also argued that the Government failed to provide discoverable information regarding searches conducted at 610 East Delevan and 321 West Delevan Avenue, Lower, Buffalo, New York ("321 West Delavan") including search warrant applications, inventory returns, and photographs.[5] (*Id.*). The other defendants joined in Lanzo-Manso's requests.

During oral argument on May 8, 2018, the Court granted defendants' request for additional discovery. The Court instructed the Government to provide defense counsel with the following: (1) a list of all firearms in the Government's possession which it anticipates introducing in its case-in-chief, the count or counts in the Indictment to which each firearm is relevant, where each firearm was found, and any accompanying

---

[5] The search of 321 West Delevan was conducted on December 19, 2015 pursuant to a Permission to Search form signed by Choi. (Dkt. No. 55-1, pg. 2-3). The search of 610 East Delevan was conducted pursuant to the search warrant discussed above. (Dkt. No. 55-2, pgs. 2-6).

laboratory reports[6]; (2) any photographs of defendants with firearms in the Government's possession; (3) all photographs, inventories, and other relevant documents pertaining to the searches of 321 West Delavan Avenue and 610 East Delavan Avenue[7]; (4) the photographs shown by the FBI to a witness on November 30, 2016; (5) relevant information as to any police ordered identification of any defendant; and (5) translations from Spanish to English of any text messages the Government intends to introduce at trial.

On June 11, 2018, the parties appeared for a status conference. Counsel for the Government and defendants agreed that the Government had complied with the Court's prior order. Specifically, the Government indicated that it filed an affidavit identifying five specific firearms that it intends to admit into evidence at trial, where each was found and the relevant count in the Indictment. (Dkt. No. 87). The Government also represented that it provided photographs, laboratory reports and chain of custody reports as to the firearms, any photographs of certain defendants with firearms, information regarding line-ups as to Cabrera and Lanzo-Manso, and the photographs shown to a witness by the FBI on November 30, 2016.[8] The Government indicated that there are no additional photographs or documents to produce related to the searches at 610 East Delavan and 321 West Delavan and that an FBI analyst is currently translating the relevant text

---

[6] With respect to the Court's order regarding production of information regarding the firearms, the Court noted that it was requiring the Government to provide information and reports as to the firearms in its possession and that this was not meant to limit the introduction of testimony by witnesses who may connect or associate defendants with other firearms not in the possession of the Government.

[7] As noted previously, the informant's *in camera* testimony in support of the search warrant for 610 East Delavan was, upon the Court's direction, not provided to defense counsel.

[8] During the status conference, counsel for Cabrera indicated that he was likely to file a further motion regarding the police ordered identification or line-up involving Cabrera. Counsel for all defendants were given two weeks from the date of the status conference to file additional motions. Counsel for Cabrera did not file a motion related to the line-up or request a *Wade* hearing.

messages, which will then be provided. Based upon the representation made by counsel for both the Government and defendants at the June 11, 2018 status conference, defendants' request for discovery pursuant to Rule 16 is denied as moot. The Government is reminded that its disclosure obligations continue up through and during trial. *See* Fed. R. Crim. P. 16(c).

Defendants also request, pursuant to Federal Rule of Criminal Procedure 12(b), notice of the Government's intent to use, during its case-in-chief at trial, any evidence that defendants may be entitled to discover under Rule 16. The Government is also reminded of its continuing obligations pursuant to Rule 12(b)(4)(B).

### Expert Witnesses

Defendants request the names and identities of expert witnesses the Government intends to call at trial, their qualifications, the subjects of their testimony, and any relevant reports. (Dkt. No. 47, pgs. 21-22; Dkt. No. 48, pg. 8; Dkt. No. 50, pg. 5). The Government responds that, in accordance with the District Court's pretrial order, it will timely disclose the names of potential expert witnesses, the contents of their reports, a list of their credentials and qualifications, the methods used to support their opinions and a summary of their anticipated testimony. In light of these representations, defendants' motions with respect to expert testimony is denied as moot with the caveat that the Government is expected to comply with all requirements in Rule 16, Federal Rules of Evidence 702, 703, and 705, and Judge Wolford's pretrial order as they apply to expert testimony.

### Witness Statements

Defendants request the disclosure of witness statements and ask that they be produced no less than four weeks prior to trial. (Dkt. No. 47, pg. 21; Dkt. No. 48, pgs. 13-

14; Dkt. No. 50-1, pgs. 10-11). Defendants further request copies of any notes taken during witness interviews or obtained during the investigation.

The Government has no general duty to disclose the identities of its witnesses before trial. *United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990). Section 3500 of Title 18 of the United States Code requires that the government, on motion of defendant, disclose a government witness's prior statements that are in the government's possession and relate to the subject matter of the witness's direct testimony ("3500 material"). *See also Jencks v. United States*, 353 U.S. 657 (1957); Fed. R. Crim. P. 26.2 (procedure for producing a witness statement). A witness statement is defined as: (1) a written statement by a witness that is signed or otherwise adopted or approved by the witness; (2) a substantially verbatim recording or transcription of a witness's oral statement; or (3) any statement however taken or recorded made by the witness to the grand jury. 18 U.S.C. 3500(e). Statements are not required to be produced, by law, until after the witness has testified on direct examination, and the Court cannot mandate that they be produced sooner. *See* 18 U.S.C. §3500(a); Fed. R. Crim. P 26.2(a).

The Government indicates that it will disclose all 3500 material, including grand jury testimony, no later than two weeks prior to trial or when so ordered by the District Court. The Government also indicates that, consistent with its usual practice, it will disclose any investigative agency or police department memorandum of interviews with witnesses.

In light of these representations, defendants' request for early disclosure of witness statements is denied as moot.[9] Defendants further request that in the event a witness

---

[9] To the extent defendants are requesting statements of non-testifying witnesses, their motions are denied. There is no obligation that the Government produce the statements of individuals who are not testifying at

has made a statement in a language other than English, the Government furnish the original statement or testimony and all translations provided. The Government is directed to comply with this request.

### Brady and Giglio Material

Defendants move for the disclosure of any favorable, exculpatory or impeachment materials pursuant to *Brady*, *Giglio* and their progeny. (Dkt. No. 47, pgs. 17-21; Dkt. No. 48, pgs. 8-12; Dkt. No. 50-1, pg. 6). The Government has an obligation to disclose exculpatory material, or material favorable to an accused as to either guilt or punishment, even when no affirmative request has been made. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Material "favorable to an accused" includes not only evidence that affirmatively tends to exculpate the defendant, but also information that impeaches the credibility of Government witnesses. *See Giglio v. United States*, 405 U.S. 150, 154-55 (1972). The test for materiality is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Evidence may be material for *Brady* purposes even if it is not admissible, as long as it could lead to the discovery of admissible evidence. *United States v. Gill*, 297 F.3d 93, 104 (2d Cir. 2002). "[A]s a general rule, *Brady* and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant." *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). "[A]s long as a defendant possesses *Brady* evidence in time for

---

trial. *United States v. Rigas*, 583 F.3d 108, 125-26 (2d Cir. 2009). However, in the event a non-testifying witness's statement contains exculpatory information or information that would impeach the credibility of a Government witness, that material is subject to disclosure pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and *Giglio v. United States*, 405 U.S. 150, 154-55 (1972).

its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *Id.* at 144.

The Government indicates that it has disclosed all *Brady* material in its possession and acknowledges its continuing duty under *Brady* to produce such material, if and when it is made aware of it. The Government also states it will provide impeachment *Giglio* material no later than when it produces and delivers 3500 material.

Given the Government's representations, defendants' motion to compel the production of *Brady/Giglio* material is denied as moot. Consistent with *Coppa*, the Government shall continue to timely disclose, to defendants, any *Brady* and *Giglio* material that it should become aware of. *See United States v. Padovani*, No. 14-CR-00224, 2016 WL 5402696, at *4 (WDNY Sept. 28, 2016).

### Disclosure of Informants' Identities and Files

Defendants move for disclosure of the names, addresses and criminal records of all informants used by the Government in the course of its investigation. (Dkt. No. 47, pgs. 13-17; Dkt. No. 48, pgs. 5-7; Dkt. No. 50, pgs. 12-14). Defendants also seek all potential impeachment material as to Government informants, including any files kept by law enforcement with respect to these individuals. The Government objects to this request on the grounds that defendants have not shown a particularized need for the information.

The Government has a qualified privilege to withhold information concerning the names of confidential informants that it does not intend to call as witnesses. *See Rovario v. United States*, 353 U.S. 53, 60-62 (1957) (the purpose of the privilege is to encourage citizens to report criminal activity). The informant's privilege must give way, however, if

disclosure is essential to a defense or the fair determination of the case. *United States v. Lilla*, 699 F.2d 99, 105 (2d Cir. 1983). To that end, a defendant seeking the identity of a confidential informant must make some evidentiary showing as to why disclosure is significant to determining defendant's guilt or innocence. *See United States v. Jimenez*, 789 F.2d 167, 170 (2d Cir. 1986) (explaining that defendants face a "heavy burden" of establishing that disclosure is essential to the defense); *Lilla*, 699 F.2d at 105 ("this requires some demonstration that in the absence of such disclosure the defendant will be denied a fair trial"); *United States v. Valenzuela-Bernal*, 458 U.S. 858, 871 (1982) (defendant need not show that the informant's testimony would actually be helpful to the defense, but instead "the events to which a witness might testify, and the relevance of those events to the crime charged").

Defendants here have not met their heavy burden with respect to early disclosure of informant identities. They do not offer examples of specific testimony or information these informants might provide. Instead, defendants argue that the informants may have knowledge as to whether defendants were or were not involved in criminal activity or may be able to offer evidence about drug activity by others. Defendants contend that they are entitled to information about any informants who participated in the criminal transactions charged here. Defendants' explanation as to how informants would provide information material or necessary to their defense at this stage in the proceeding is speculative. If and when the informants are to be called as witnesses at trial, defendants will have access to their identities as well as all relevant impeachment material, prior statements and notes of their interviews. In addition, if the informants reveal exculpatory information at any time, the Government has an ongoing duty to disclose this information in time for

its effective use at trial. Thus, defendants' motion for disclosure of informant identities is denied.

### *Bill of Particulars*

Defendants move for a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure. (Dkt. No. 47, pgs. 29-32; Dkt. No. 48, pgs. 2-5; Dkt. No. 50, pgs. 9-12).[10] With respect to the narcotics conspiracy defendants seek, *inter alia*, information as to the exact times, dates and locations of all acts done in furtherance of the conspiracy, the quantity of drugs alleged to have been distributed by each defendant, and the locations defendants possessed the illegal narcotics. They request a description of all acts, charged or uncharged, done in furtherance of the conspiracy as well as statements made in furtherance of the conspiracy. They seek particularization as to the individuals present for the alleged acts, whether Government agents or informants were present or involved, and the identities of any unindicted co-conspirators. Defendants request information as to how they are alleged to have entered and exited the conspiracy, how the alleged conspiracy began, and the manner in which the Government intends to prove agreement. They also seek particularization as to whether they are charged as principals or accomplices. With respect to the firearms offenses, defendants seek information as to the exact times, dates and locations the various offenses occurred. They request particularization of the make and model of weapons alleged to have been used or discharged and an explanation as to whether they were operable. Additionally, defendant

---

[10] Defendants Cabrera, Lanzo-Manso and Rodriguez all request a bill of particulars and ask for specific information about the alleged narcotics conspiracy and the firearms offenses. Choi, who is not charged in the narcotics conspiracy or with any of the firearms-related offenses, has joined in all requests of her co-defendants but does not set forth any specific information she seeks through a bill of particulars.

Cabrera specifically requests information as to how it is alleged he unlawfully maintained the premises at 321 West Delevan for drug distribution.

Federal Rule of Criminal Procedure 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). However, "[t]he Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendants committed the crimes charged, or a preview of the Government's evidence or legal theories." *United States v. Rittweger*, 259 F. Supp. 2d 275, 291 (SDNY 2003). In determining whether a bill of particulars is warranted, a court is to consider "the complexity of the offense, the clarity of the indictment, and the degree of discovery otherwise afforded to defendants." *United States v. Shoher*, 555 F. Supp. 346, 349 (SDNY 1983). It is well-settled that acquisition of evidentiary detail is not the purpose of a bill of particulars. *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990). Further, a defendant is not generally entitled to receive details of the government's conspiracy allegations through a bill of particulars. *United States v. Wilson*, 493 F. Supp. 2d 364, 372 (EDNY 2006).

The charges here are neither complex nor difficult to understand. They involve, generally, a conspiracy to distribute narcotics over a period of approximately ten months and allegations that defendants used firearms in furtherance of their narcotics trafficking during that same time. The Indictment specifies the types and the approximate amounts of the illegal substances involved. In addition, Cabrera and Lanzo-Manso are accused of

discharging firearms in furtherance of drug trafficking on specific days. As explained above, the Government has provided defendants with a list of five specific firearms in their possession, has identified where those firearms were seized from, and has identified which count or counts in the Indictment those firearms relate. Thus, many of the defendants' requests for particularizations as to the firearms offenses have been fulfilled. Various defendants are also charged with maintaining drug involved premises during the course of the narcotics conspiracy. The Indictment specifies the address of the premises involved, the dates those premises were used, and the type of narcotics manufactured or distributed at each location. The Government has also disclosed, *inter alia*, information and evidence found pursuant to searches at 321 West Delavan and 610 East Delavan, FBI 302's, laboratory reports, photographs, and information about various identification procedures. The Government is in the process of translating Spanish text message which it intends to introduce at trial.

Considering the allegations in the Indictment in conjunction with the materials produced in discovery, the Court finds that defendants have been provided with sufficient information to inform them of the charges against them, prepare a defense, avoid surprise at trial, and ensure against double jeopardy. The additional details sought by defendants amount to an attempt to use a bill of particulars as a discovery device. *See e.g.*, *United States v. Biaggi*, 675 F. Supp. 790, 809 (SDNY 1987) (defendants request for "each alleged date, time, person present, place, nature of conversation [and] amount" is an "impermissible attempt to compel the Government to provide evidentiary details of its case."); *United States v. Trippe*, 171 F. Supp. 2d 230, 240 (SDNY 2001) (denying request for "names of all co-conspirators and/or aidors and abettors…of the defendant"); *United*

*States v. Barret*, 824 F. Supp. 2d 419, 439 (EDNY 2011) (the nature of the wheres, when and with whoms of a conspiracy are frequently held to be beyond the scope of a bill of particulars since the government "is not required to prove exactly when or how a conspiracy formed or when or how a particular defendant joined the scheme"); *United States v. Walker*, 922 F Supp. 732, 739 (NDNY 1996) (overt acts in furtherance of a conspiracy need not be disclosed); *Torres*, 901 F.2d at 234 (finding that the district court acted well within its discretion denying defendant's request for a bill of particulars specifying when he joined the conspiracy, the identity of unindicted co-conspirators, and the precise dates and locations he was alleged to have transported heroin). For these reasons, defendants' request for a bill of particulars is denied.

### *Production of Grand Jury Transcripts*

Defendants move for disclosure of transcripts of all testimony and exhibits considered by the grand jury in this case. (Dkt. No. 50-1, pg. 2). The Government objects to the request.

The Government has indicated that it will disclose any grand jury testimony that constitutes 3500, *Brady* or *Giglio* material. Notwithstanding this material, a defendant is not entitled to inspect grand jury minutes and evidence without producing "concrete allegations of government misconduct." *United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994). Defendants have not made any such allegations here. Instead, they state only that the material is necessary because they are subject to a "bare bones" Indictment and are entitled to know the witnesses against them. This argument is insufficient to entitle defendants to view grand jury material. *See United States v. Ulbricht*, 858 F.3d 71, 106-107 (2d Cir. 2017) (to be entitled to disclosure of grand jury proceedings, a

defendant must show a particularized need that outweighs the strong government and public policy interests in the secrecy of grand jury proceedings); *United States v. Ayeki*, 289 F. Supp. 2d 183, 186 (D. Conn. 2003) ("grand jury proceedings carry a presumption of regularity, and a review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct."). Therefore, to the extent that defendants request grand jury material that is not also 3500, *Brady* or *Giglio* material, the request is denied.

### *Post-Arrest Statements by Co-Conspirators, Testimonial Hearsay and Severance*

Defendants request that the Court bar evidence of all incriminating post-arrest statements made by non-testifying co-conspirators or co-defendants as well as any testimonial hearsay. (Dkt. No. 47, pg. 28; Dkt. No. 48, pgs. 18-19). The Government argues, in response, that statements made during the course of and in furtherance of a conspiracy are excluded from the definition of hearsay. *See* Fed. R. Evid. 801(d)(2)(E). *See also Bruton v. United States*, 391 U.S. 123, 135-37 (1968) (the admission of a co-defendant's "powerfully incriminating extrajudicial statements" during a joint trial of a non-testifying accomplice violated the Confrontation Clause); *c.f. Richardson v. Marsh*, 481 U.S. 200 (1987) (the Confrontation Clause is not violated by the admission of a non-testifying co-defendant's confession with a proper limiting instruction when the confession is redacted to eliminate not only the victim's name, but also any reference to his or her existence.") Defendant Lanzo-Manso further argues that the admission of statements by co-defendants may result in spill-over prejudice and the Court should order disclosure of "any statements attributable to any one of the defendants whether made by the defendants to a police agency or to another individual." (Dkt. No. 50-1, pgs. 2-4). He

contends that the Court should consider granting severance based on these statements pursuant to Federal Rule of Criminal Procedure 14.

Rule 16 does not provide for the disclosure of co-conspirator statements. To the extent that the statements in question constitute 3500, *Giglio* or *Brady* material, those statements will be disclosed in accordance with the procedures discussed above. Otherwise Federal Rule of Evidence 801(d)(2)(E) does not contain a requirement as to pretrial notice of statements. Further, the admissibility of any co-conspirator statements, as well as any *Bruton* implications and requests for severance, are best addressed by the District Judge. *See United States v. Mireles*, 08 CR 34, 2009 U.S. Dist. LEXIS 109176 (WDNY Nov. 23, 2009) (Severance motions "are more appropriately heard and determined by the trial court, which is in the best position to rule on the issues presented."). *United States v. Anguiera*, 11-CR-116; 2012 U.S. Dist. LEXIS 51862 (WDNY April 12, 2012) ("[T]he relief sought for excluding non-testifying co-conspirator statements…[i]s better considered by the District Judge prior to trial and deferred for that consideration."). Therefore, defendants' requests are denied without prejudice to renew their motion before Judge Wolford.

### *Voir Dire of Expert Witnesses and Government Summaries*

Defendants move for an order allowing *voir dire* of any Government experts outside the presence of the jury. (Dkt. No. 50-1, pgs. 5-6; Dkt. No. 47, pgs. 25-27). Defendants also move for an order permitting them to inspect summaries the Government intends to use at trial pursuant to Federal Rule of Evidence 1006 and the original books, records or documents that serve as a basis for the summaries. (Dkt. No. 47, pgs. 25-27; Dkt. No. 48, pgs. 15-16). The Government indicates that to the extent it seeks to use

summaries to introduce voluminous content at trial, it will comply with the notice and inspection requirements of Rule 1006.

Determinations as to the manner of *voir dire* of experts and the introduction of summary evidence are to be made by the District Judge at the time of trial. Therefore, defendants' motions are denied without prejudice for renewal before Judge Wolford.

### Rule 404(b) and Impeachment Evidence

Defendants move for disclosure of any evidence of prior crimes or bad acts the Government intends to introduce at trial pursuant to Federal Rule of Evidence 404(b). (Dkt. No. 50-1, pg. 9; Dkt. No. 47, pg. 22; Dkt. No. 48, pgs. 12-13). Defendants also move for pretrial disclosure of impeachment evidence pursuant to Federal Rules of Evidence 608 and 609. (*Id*.). The Government states that it will disclose any evidence in its possession which might fall under the ambits of Rules 404(b), 608, and 609 pursuant to the District Judge's pretrial order. Based upon the Government's representation that it will disclose Rule 404(b) evidence and impeachment evidence at the time required by the District Judge, defendants' motions are denied as moot. The issue of admissibility of evidence pursuant to Federal Rules of Evidence 404(b), 608 and 609 is left to the determination of Judge Wolford at the time of trial.

### Notice of Rule 807 Evidence

Defendants move for disclosure of any statements the Government will seek to introduce pursuant to Federal Rule of Evidence 807. (Dkt. No. 47, pg. 22). The Government states that it is not currently aware of any statements that fall within the parameters of Rule 807. However, if such statements are discovered, the Government

will comply with the notice requirements of Rule 807. Therefore, defendants' request is denied as moot.

### Preservation of Rough Notes and Other Evidence

Defendants move for an order requiring all government agents and officers to retain and preserve all rough notes taken in the course of the investigation and to retain and preserve evidence such as controlled substances. (Dkt. No. 50-1, pg. 11). The Government indicates that it intends to preserve all rough notes and other evidence. The Court grants defendants' motion and directs the Government to arrange for the preservation of all rough notes and evidence.

### Leave to Make Additional Motions

Defendants also move to reserve the right to make further motions as necessary. (Dkt. No. 50-1, pg. 11; Dkt. No. 47, pg. 32; Dkt. No. 48, pg. 19). To the extent that defendants intend to bring motions based upon new information or evidence that has not yet been disclosed, their request for leave to file additional motions is granted. To the extent that defendants intend to bring motions concerning issues that could have been raised prior to the previous motion deadline, defendants' request is denied without prejudice to bring the motions upon a showing of good cause for the untimely filing.

### Reciprocal Discovery

The Government moves for reciprocal discovery pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure including the opportunity to inspect, copy or photograph books, papers, documents, photographs, tangible objects or copies or portions thereof which are in the possession, custody or control of defendants and which defendants intend to introduce as evidence at trial, the results or reports of any physical

or mental examinations or scientific tests or experiments made in connection with the case, and a written summary of any expert witness testimony.  (Dkt. No. 50, pgs. 20-21; Dkt. No. 52, pg. 4; Dkt. No. 53, pg. 19; Dkt. No. 54, pgs. 18-19).  The Government's motion for reciprocal discovery is granted, and defendants are reminded that their disclosure obligations continue up through and during trial.  *See* Fed. R. Crim. P. 16(c).

## CONCLUSION

For the foregoing reasons, it is recommended that defendant Josue Diaz Rodriguez's request for a hearing and motion to suppress evidence be denied.  It is ordered that defendants Gonzalo Velasquez Cabrera's, Orlando Lanzo-Manso's, Josue Diaz Rodriguez's and Eunhe Choi's omnibus discovery demands are decided in the manner detailed above and the Government's request for reciprocal discovery is granted.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report, Recommendation and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Wolford, any objections to the recommendation portion of this Report, Recommendation and Order must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 59(b), 45(a), and 45(c) of the Federal Rules of Criminal Procedure, and Local Rule of Criminal Procedure 59.  Any requests for an extension of this deadline must be made to Judge Wolford.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report, Recommendation and Order WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.***  *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Criminal Procedure 59(c)(2), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

**SO ORDERED**.

Dated:  August 8, 2018
        Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge