UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                          **DECISION AND ORDER**

          v.                                     1:17-CR-00202 EAW
                                                 1:22-CV-00515 EAW

GONZALO VELAZQUEZ CABRERA, *a/k/a Bebé*,

            Defendant.
_____

# INTRODUCTION

On December 14, 2018, petitioner Gonzalo Velazquez Cabrera ("Petitioner") pleaded guilty pursuant to the terms and conditions of a plea agreement to conspiracy to possess with intent to distribute and to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 846 and discharge of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2.  (Dkt. 160; Dkt. 241; *see* Dkt. 255 at 1).[1]  Defendant was sentenced on September 10, 2021, to an aggregate prison sentence of 153 months followed by five years of supervised release.  (Dkt. 257; Dkt. 259).  Proceeding *pro se*, Petitioner filed a motion on July 5, 2022, pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  (Dkt. 261).  For the reasons that follow, Petitioner's motion is denied.

---

[1] All docket references in this Decision and Order are to the docket in Criminal Action No. 1:17-CR-00202.

## BACKGROUND

On October 26, 2017, a grand jury indicted Petitioner on one count of conspiracy to distribute controlled substances (namely, 100 grams or more of a mixture and substance containing heroin, 5 kilograms or more of a mixture and substance containing cocaine, and a quantity of cocaine base) in violation of 21 U.S.C. § 846, one count of possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2, two counts of discharge of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(iii), one count of discharge of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2, and one count of maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2. (Dkt. 1).

Attorney Thomas F. Keefe ("Keefe") was appointed to represented Petitioner on October 27, 2017. (Dkt. 3). On December 14, 2018, Petitioner appeared with Keefe before the undersigned and pleaded guilty pursuant to the terms and conditions of a plea agreement to conspiracy to possess with intent to distribute and to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 846 (lesser included offense of Count 1) and discharge of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2 (Count 4). A Spanish-language interpreter was present at this proceeding, but Petitioner affirmatively elected to proceed in English. (Dkt. 241 at 2-3). The interpreter remained present throughout the proceeding and Petitioner was advised that he could request "any kind of translation that [he] need[ed]." (*Id.* at 3). Petitioner stated under oath that he could read, write, and understand English. (*Id.* at 5).

On September 10, 2021, the Court sentenced Petitioner to 33 months imprisonment on Count 1 and 120 months imprisonment on Count 4, to run consecutively for a total of 153 months in the custody of Bureau of Prisons. (Dkt. 257). The Court further sentenced Petitioner to five years of supervised release for each count, to run concurrently. (*Id*.). The Court did not impose a fine. (*Id.*). As with the plea hearing, a Spanish-language interpreter was present and available to Petitioner during sentencing, but he opted to proceed in English. (Dkt. 287 at 2-3). Petitioner spoke at length in English at sentencing, describing his childhood, the birth and subsequent death of his eldest daughter, and other information regarding his personal history. (*Id*. at 13-18).

Judgment was entered on September 16, 2021. (Dkt. 259). No appeal was taken. Less than a year later, on July 5, 2022, Petitioner filed his *pro se* motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (Dkt. 261). In his motion, Petitioner claims that Keefe provided him with ineffective assistance of counsel and that he is actually innocent of violating 18 U.S.C. § 924(c)(1)(A)(iii), because he brandished but did not discharge a firearm. (*Id*. at 4-8).

Because Petitioner's motion challenges Keefe's representation, the government moved for discovery based on a waiver of the attorney-client privilege. (Dkt. 267). Specifically, the government sought to obtain an affidavit from Keefe responding to Petitioner's claims that Keefe "disregarded his request to file a notice of appeal and failed

to investigate his case, among other claims." (*Id*. at 2). The Court granted the government's motion. (Dkt. 285).²

The government thereafter submitted its opposition to Petitioner's motion, including a sworn affirmation from Keefe. (Dkt. 290; Dkt. 292). Petitioner did not file a reply.

## DISCUSSION

### I. Legal Standard

Section 2255(a) provides, in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

---

² After the deadline for any opposition, Petitioner filed a response in which he did not explicitly oppose the government's motion, but asked that any discovery be limited to "the claims against [Keefe's] performance as the petitioner's attorney." (Dkt. 286 at 2). The Court did not receive this filing until after it had entered its Order granting the government's motion, but that Order indeed limited the discovery to "the specific issues raised by" Petitioner's motion. (Dkt. 285).

Petitioner also requested that he be appointed an attorney if the Court granted the government's motion. (*Id*.). He cited to Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts, which provides: "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law. If necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A." Here, the only discovery the Court authorized was submission of an affidavit or affirmation from Keefe, and appointment of an attorney to Petitioner was unnecessary for that discovery to occur effectively. Accordingly, the Court did not appoint counsel for Petitioner. *See, e.g.*, *Lopez v. United States,* No. 03 CR. 317 (SWK), 2006 WL 2020389, at *3 (S.D.N.Y. July 12, 2006) (denying motion for appointment of counsel where the petitioner's trial counsel had "submitted a sworn, notarized affidavit concerning the facts at issue").

28 U.S.C. § 2255(a). "Section 2255 provides relief in cases where the sentence: (1) was imposed in violation of the U.S. Constitution or the laws of the United States; or (2) was entered by a court without jurisdiction to impose the sentence; or (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack." *Adams v. United States*, 372 F.3d 132, 134 (2d Cir. 2004) (citing 28 U.S.C. § 2255).

Ordinarily, a defendant must exhaust his direct appeal before filing a motion pursuant to § 2255. *United States v. Vilar*, 645 F.3d 543, 546 (2d Cir. 2011). However, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

## II.   Petitioner's Claims

As an initial matter, the Court notes that Petitioner's plea agreement provides that he "knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court" within or less than 190 to 207 months imprisonment, a fine of $25,000 to $5,000,000, and a period of supervised release of four to five years. (Dkt. 292-2 at 7, 10). The sentence imposed in this case is within the range of the appellate/collateral attack waiver contained in the plea agreement—namely, the 153-month aggregate prison term is below the specific incarceration range set forth in the plea agreement.

"A defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable." *Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016). But a collateral attack waiver is unenforceable if it "was the result

of ineffective assistance of counsel[.]" *United States v. Monzon*, 359 F.3d 110, 119 (2d Cir. 2004). Accordingly, the Court must assess on the merits whether Petitioner's plea agreement resulted from the ineffective assistance of counsel.

### A.  Ineffective Assistance of Counsel

"The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding." *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). "Pursuant to the well-known two-part test of *Strickland v. Washington,* 466 U.S. 668 (1984), a habeas petitioner alleging ineffective assistance of counsel 'must demonstrate (1) that his counsel's performance fell below what could be expected of a reasonably competent practitioner; and (2) that he was prejudiced by that substandard performance.'" *Woodard v. Chappius*, 631 F. App'x 65, 66 (2d Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 241 (2009)). "Judicial scrutiny of counsel's performance must be highly deferential," and "counsel is strongly presumed to have rendered adequate assistance." *Strickland*, 466 U.S. at 689-90. "To overcome this presumption, a petitioner 'bears a heavy burden[.]'" *Englert v. Lowerre*, 115 F.4th 69, 81 (2d Cir. 2024) (quoting *United States v. Barrett*, 102 F.4th 60, 72 (2d Cir. 2024)).

#### 1.  Validity of Petitioner's Plea

When applying the first *Strickland* prong in the plea context, "[a] defendant suffers a Sixth Amendment injury" when defense counsel fails "to give their clients professional advice on the crucial decision of whether to accept a plea offer from the government." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003); *see Frye*, 566 U.S. at 145. "Ineffective assistance of counsel during plea negotiations can invalidate a guilty plea . . . to the extent

- 6 -

that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005). Additionally, "[i]n the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163; *see Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (holding a petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial").

Petitioner's § 2255 motion is based primarily on his claims that Keefe's performance was so deficient as to render his guilty plea involuntary and unknowing. Petitioner contends that Keefe failed to investigate the charges against him, or to advocate for him in any meaningful way. Instead, Petitioner alleges, Keefe told him, "You deserve what you get. You're nothing but a murderer who's guilty of all this and more. You[r] case is a waste of my time." (Dkt. 261 at 17). Petitioner further contends that Keefe, "out of spite," "took advantage of his client's mental health and language comprehension to coerce and threaten him into pleading guilty to a crime other than the one he actually committed." (*Id*. at 16). Specifically, Petitioner denies having aided and abetted the discharge of a firearm in furtherance of a drug trafficking, arguing that he "was stuck in a vehicle with the shooter and could not remove himself from the situation" and that he "tried to diffuse the situation and also to drive away before any discharge occurred." (*Id*. at 18).

Petitioner's claims lack credibility, are contradicted by the evidence of record including his own sworn statements, and are unsupported by any evidence beyond his own self-serving assertions. *See Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009)

(explaining that in deciding a § 2255 motion, "a district court need not assume the credibility of factual assertions . . . where the assertions are contradicted by the record in the underlying proceeding"). The Court begins with the claim that Keefe failed to investigate the charges against Petitioner or meaningfully advocate for him. Keefe has submitted a sworn affirmation stating that this is not true, and that "a full investigation was done regarding the charges . . ., [and] the possible defenses to those charges." (Dkt. 292-1 at 3). Keefe further states under penalty of perjury that "substantial time was devoted to assuring that [Petitioner] fully understood all of the results of the investigation." (*Id.*).

Keefe's affirmation is supported by the record in this case, which shows that Keefe filed a 33-page motion seeking numerous forms of relief, including discovery and a bill of particulars. (Dkt. 47). Keefe also filed a motion seeking a suppression hearing in which he discussed in detail the specifics of the law enforcement interview of Petitioner. (Dkt. 99). Keefe also engaged in plea negotiations while simultaneously preparing for trial, which was scheduled for January 2, 2019. (*See* Dkt. 136; Dkt. 150).

The Court gives no credence to Petitioner's belated claim that Keefe told him, "You deserve what you get. You're nothing but a murderer who's guilty of all this and more. You[r] case is a waste of my time." (Dkt. 261 at 17). At no point during the conduct of his criminal proceedings did Petitioner suggest that Keefe had engaged in such egregious conduct. To the contrary, Petitioner confirmed at the plea hearing that he was satisfied with Keefe's advice and representation. (Dkt. 241 at 11). "[T]he representations of the defendant, his lawyer, and the prosecutor at" a plea hearing, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings."

- 8 -

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).  This is so because "[s]olemn declarations in open court carry a strong presumption of verity."  *Id*.; *see also United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) (noting that "statements at a plea allocution carry a strong presumption of veracity").

Far from abandoning his duty to his client, Keefe strongly advocated for Petitioner in connection with sentencing.  He submitted numerous letters of support (Dkt. 251) and a sentencing memorandum (Dkt. 253).  At sentencing, Keefe argued at length that Petitioner was a good person who should be given a chance by the Court.  (Dkt. 287 at 7-13).  There is no support whatsoever for Petitioner's assertion that Keefe believed that Petitioner was guilty and "deserved the harshest possible sentence."  (Dkt. 261 at 23).

Petitioner's statements during the plea hearing also entirely contradict his claim that Keefe somehow took advantage of a language barrier.  At the plea hearing, it was Petitioner himself who told the Court that he did not want the assistance of the interpreter and that an interpreter was unnecessary because he understood English.  (Dkt. 241 at 2-3).  Further, Petitioner had no difficulty participating in either the plea hearing or sentencing in English.  To the contrary, he communicated with the Court at length in English at both proceedings, and specifically affirmed that he could read, write, and understand English.  (*Id*. at 5).  The presentence investigation report, to which Petitioner raised no objections, also states that Petitioner is fluent in English and Spanish.  (Dkt. 175 at 21).

Moreover, while Petitioner was born in Puerto Rico, the record reflects that he moved to Buffalo, New York, when he was two years old and attended school in Buffalo from pre-k through the second grade.  (*Id*. at 18; Dkt. 287 at 13).  Petitioner then returned to Puerto

Rico, but also completed the ninth grade in Buffalo. (Dkt. 175 at 18). The presumption that Petitioner was being truthful when he told the Court that he could read, write, and understand English during the plea hearing has not been overcome in this case.

Petitioner further claims that he did not understand the mandatory minimums and believed acceptance of the plea agreement would result in a guideline sentence of only 70-87 months. (Dkt. 261 at 15). He also asserts that Keefe failed to explain the difference between possession, brandishing, and discharge of a firearm, and that Keefe "never discussed any possible defenses." (*Id.*). Keefe has stated under penalty of perjury that "extensive time" was spent ensuring that Petitioner had a full understanding of the plea agreement. (Dkt. 292-1 at 3). Keefe has further averred that he investigated possible defenses and discussed the results of that investigation with Petitioner. (*Id.*).

The plea hearing over which the undersigned presided is fully consistent with Keefe's representations. *See, e.g.*, *Knight v. United States*, No. 10-CR-144S, 2017 WL 77107, at *6 (W.D.N.Y. Jan. 9, 2017) ("A court can reject bald accusations of ineffective assistance of counsel that contradict a § 2255 petitioner's sworn statements at the plea allocution."). Petitioner told the Court that Keefe had gone over the entire plea agreement with him. (Dkt. 241 at 8). Nevertheless, when the Court learned that Petitioner had not read the entirety of the plea agreement himself, it gave him "whatever time [he] need[ed] to read it" and to consult with Keefe. (*Id.* at 8-9). Petitioner subsequently made revisions to the factual basis of the plea, but never suggested that he did not understand its legal terms. The Court walked through the elements of the crimes that the government would be required to prove if the

case were to proceed to trial, and Petitioner confirmed that he understood these elements. (*Id*. at 24-25).

The Court also walked Petitioner through the minimum and maximum sentences for the crimes to which he pled guilty. Petitioner confirmed that he understood that the mandatory minimum sentence on Count 1 was five years. (*Id*. at 12). He further confirmed that he understood that the mandatory minimum sentence on Count 4 was ten years, and that the "sentence has to be imposed consecutively to any other prison sentence." (*Id*. at 12-13). Petitioner told the Court that he understood that under the plea agreement, he was agreeing not to argue for a sentence outside a range of 190 to 207 months of imprisonment. (*Id*. at 18-19). Petitioner's current self-serving assertions do not overcome the presumption that he was being truthful when he made these representations to the Court under oath.

Petitioner also told the Court that he had not been coerced or threatened in any way in order to get him to plead guilty, and that he was signing the plea agreement voluntarily and of his own free will. (*Id*. at 16, 28). Petitioner has submitted nothing to overcome the strong presumption that his representation that he had not been threatened was true. This includes Petitioner's claim that Keefe told him, "you must agree to this and plead guilty otherwise your girl friend is going to prison for a long time," and that this amounted to a threat. (Dkt. 261 at 15). Keefe denies having threatened Petitioner. (Dkt. 292-1 at 4). Part of Petitioner's plea agreement was that the government would offer his fiancée, co-defendant Eunhe Choi, a plea agreement pursuant to which she would plead guilty to a misdemeanor. (Dkt. 292-2 at 9). It was not inappropriate or improper for Keefe to ensure that Petitioner understood that he would not receive this benefit if he did not accept the plea agreement.

Nor did Keefe provide deficient representation by not seeking to have Petitioner's competency evaluated. Petitioner claims that he was "facing a mental health crisis" and that he exhibited "warning signs" and "erratic behavior" in front of Keefe. (Dkt. 261 at 14-15). But at the plea hearing, the Court explored this issue with Petitioner, asking him whether he had been treated for any mental or emotional disorders. (Dkt. 241 at 5). Petitioner reported that he had been treated for anxiety and withdrawal of Xanax, and the Court confirmed—based on the undersigned's own knowledge of the prior appearances—that the Xanax withdrawal had occurred "some time ago" when Petitioner first appeared before the undersigned. (*Id*. at 5-6). Petitioner advised the Court that he was taking medication for anxiety and depression and that he had taken his normal daily dose of his medications. (*Id*. at 6). He further confirmed that neither his mental health conditions nor the medication he was taking for those conditions was impacting his ability to understand what was happening in the courtroom. (*Id*.). The Court asked, "Can you understand what's happening?" and Petitioner replied, "Yes, your honor." (*Id*. at 6-7).

"Although competency may be raised for the first time on collateral review, district courts within the Second Circuit have routinely denied § 2255 motions that allege counsel was ineffective for failing to seek a psychiatric evaluation, where the movant offered nothing more than the conclusory assertion that expert testimony would have made a difference in the outcome of his case." *Wilson v. United States*, No. 3:16-CV-1791 (SRU), 2017 WL 3044652, at *6 (D. Conn. July 18, 2017) (citations and quotation omitted). Petitioner has submitted nothing to support the conclusion that he was actually incompetent at the time he entered into the plea agreement. In the affidavit he has submitted in connection with his

motion, he does not claim that he was suffering from a mental health condition that rendered him unable to understand the proceedings or assist in his own defense. (*See* Dkt. 261 at 30-31). Petitioner has not shown that Keefe was ineffective in not seeking a competency evaluation. *See Wilson*, 2017 WL 3044652, at *6 ("In support of his competency arguments, [the petitioner] cites to statements by counsel at his bond hearing indicating that he had a history of depression and substance abuse; as the government points out, however, he offers no evidence that he was in fact incompetent during any part of his criminal proceedings, nor that a psychiatric evaluation would have had any impact on the outcome of his case. Thus, [the petitioner] has failed to show that his conviction and sentence were unlawfully imposed in the absence of an evaluation or that his counsel was constitutionally ineffective for failing to request one.").

Petitioner's claim that Keefe somehow misled him into pleading guilty to a crime that he did not actually commit similarly lacks merit. Petitioner's belated claim that he did not know that his co-defendant had a firearm and that he did not aid and abet the discharge is entirely contradicted by his representations at the plea hearing. Petitioner told the Court that he knew that his co-defendant had a firearm, that he pulled his vehicle up alongside a vehicle occupied by a rival drug dealer, and that he intended to help his co-defendant with the discharge, which occurred in furtherance of their drug dealing activities. (Dkt. 241 at 32-34). Petitioner further confirmed that in a text message exchange that followed between himself and the rival drug dealer, he told the rival drug dealer he was "a dead man." (*Id*. at

34-35).³  Petitioner did not merely agree to this factual recitation—he insisted on revisions to the plea agreement to ensure that the factual basis was accurate.  (*Id*. at 9-11).

As to Petitioner's assertion that Keefe did not correct inaccurate information in the presence investigation report  (the "PSR") (*see* Dkt. 261 at 21), the Court notes as a threshold matter that this argument has no bearing on the validity of the plea agreement itself or the collateral attack waiver contained therein.  Because the Court finds no reason to conclude that Keefe provided deficient performance with respect to Petitioner's decision to enter into the plea agreement, this claim is barred by the collateral attack waiver.  *See, e.g.*, *United States v. Neal*, 27 F. Supp. 3d 302, 307 (N.D.N.Y. 2014) (finding argument that counsel was ineffective because he "failed to object to certain aspects of the PSR adopted at his sentencing" barred by waiver in plea agreement).

But this claim also fails on the merits.  At sentencing, Petitioner confirmed under penalty of perjury that he had gone over the PSR with his attorney, and he remained silent when Keefe stated that he had no objections to the PSR.  (Dkt. 287 at 4-5).  In his § 2255 motion, Petitioner has provided no detail about the allegedly incorrect information in the PSR, other than simply asserting that facts he expressly acknowledged under penalty of perjury at the plea hearing were not actually true.  Petitioner's "self-serving, uncorroborated and improbable assertions are insufficient to establish that . . . [Keefe] provided ineffective assistance."  *Krasniqi v. United States*, 195 F. Supp. 3d 621, 634 (S.D.N.Y. 2016).

---

³   Copies of these text message exchanges have been submitted to the Court in connection with the instant motion. (*See* Dkt. 290 at 25; Dkt. 292-1 at 5-15).  They confirm that this incident was part of a violent feud between rival drug dealers.

For all these reasons, the Court finds that Petitioner cannot establish the first *Strickland* prong—that his counsel's performance fell below what could be expected of a reasonably competent practitioner. The Court further concludes that he cannot establish the second *Strickland* prong of prejudice. Petitioner claims that "[i]f I had all the information, I would have either insisted on going to trial, or upon ensuring that the plea agreement and factual basis were accurately presented." (Dkt. 261 at 31). More specifically, Petitioner argues that if he had known that "a jury would have been required to find the essential element of discharge and attributed it to the Petitioner, . . . he would have insisted on going to trial or on a plea agreement that reflected the true facts of the incident." (*Id*. at 18). But the Court affirmatively told Petitioner at the plea hearing that he had the right to go to trial, and that at the trial, "[t]he jury would have to determine that the government had proven each element of each charge under consideration beyond a reasonable doubt." (Dkt. 241 at 24).

The Court further directed Petitioner to paragraph three of the plea agreement, which sets forth the elements of each of the crimes to which Petitioner pled guilty. (*Id*.). Paragraph three of the plea agreement states that one of the elements of Count 4 is:

> [C]o-defendant Orlando Lanzo-Manzo knowingly used, carried, and discharged a firearm in furtherance of the aforementioned drug trafficking crime and [Petitioner] consciously shared Lanzo-Manso's knowledge of the discharge of the firearm in furtherance of a drug trafficking crime, intended to help him, and took part in the endeavor, seeking to make it succeed.

(Dkt. 292-2 at 3-4). The Court reiterated that element to Petitioner. (Dkt. 241 at 25). Petitioner confirmed that he understood that he had the right to have this element found by a jury. (*Id*.). Petitioner's contention that this information would have changed his decision-

making accordingly lacks any merit. *See Moore v. United States*, No. 16 CR 167 (LAP), 2022 WL 2306910, at *3 (S.D.N.Y. June 27, 2022) ("Because the prejudice standard is objective, plaintiff may not rely on his subjective, though objectively unreasonable, belief that he would not have pleaded guilty had his counsel provided adequate representation." (citation and alteration omitted)).

At the plea hearing, the Court explained to Petitioner exactly what his sentencing exposure would be if he entered into the plea agreement. Had he rejected the plea offer and proceeded to trial, he would have been facing a maximum sentence of life imprisonment. His submissions do not come close to demonstrating that he would not have entered into the plea agreement absent any allegedly deficient performance by Keefe. Petitioner's failure to demonstrate prejudice is fatal to his claim of ineffective assistance of counsel in connection with his decision to enter into the plea.

### 2. Failure to File a Notice of Appeal

Petitioner also claims that Keefe provided ineffective assistance because he failed to file a notice of appeal despite Petitioner having requested that he do so. (Dkt. 261 at 23-24). Petitioner claims to have sent a letter to Keefe requesting that he file an appeal (*id*. at 23), but has not provided a copy of this alleged letter. Petitioner asserts that "[w]hen Counsel finally responded, he indicated that Petitioner had waived his appellate rights and could not appeal. Specifically, counsel stated 'I'm not going to appeal this. You're guilty, you waived your rights, now do the time.'" (*Id*. at 23, 30). Keefe has stated under penalty of perjury that Petitioner "never requested or directed that [Keefe] file an appeal on his behalf[.]" (Dkt. 292-1 at 4).

"[A] lawyer who disregards a defendant's specific instruction to file a notice of appeal acts in a manner that is professionally unreasonable, and . . . where counsel's error leads to 'the forfeiture of a proceeding itself,' prejudice will be presumed." *Campusano v. United States*, 442 F.3d 770, 773 (2d Cir. 2006) (citation omitted) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)). "When counsel fails to file a requested appeal, a defendant is entitled to a new appeal without showing that his appeal would likely have had merit." *Flores-Ortega*, 528 U.S. at 477 (quotation omitted). "[E]ven after a waiver, a lawyer who believes the requested appeal would be frivolous is bound to file the notice of appeal and submit a brief[.]" *Campusano*, 442 F.3d at 771-72; *see Garza v. Idaho*, 586 U.S. 232, 241-42 (2019) (holding counsel's failure to file a notice of appeal after an express request by the defendant for an appeal constituted ineffective assistance of counsel despite the presence of an appeal waiver in the plea agreement).

But the Court is not required to simply accept Petitioner's self-serving and uncorroborated claim that he directed Keefe to file a notice of appeal and that Keefe disregarded this instruction. *See Samet v. United States*, 559 F. App'x 47, 49 (2d Cir. 2014) ("district courts need not accept the uncorroborated statements of a criminal defendant at face value"). Nor is the Court required to hold an evidentiary hearing to resolve this factual dispute, where it has sufficient information—including Keefe's sworn affirmation and its own observations as the trial judge—to resolve the dispute. *See Thomas v. United States*, 93 F.4th 62, 66 (2d Cir. 2024) ("In many cases, the district court may discharge [its] obligation by accepting affidavits from the defendant's prior counsel, including those filed as part of the government's opposition papers."); *Puglisi*, 586 F.3d at 214 ("[W]hen the judge that

tried the underlying proceedings also presides over the [s]ection 2255 motion, a less-than-full-fledged evidentiary hearing may permissibly dispose of claims where the credibility assessment would inevitably be adverse to the petitioner."); *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) ("the district court may use methods under Section 2255 to expand the record without conducting a full-blown testimonial hearing").

The Court credits Keefe's sworn statement that Petitioner did not ask him to file a notice of appeal. As noted above, Keefe's sworn statements in this case are consistent with and supported by the surrounding circumstances and the prior proceedings. Petitioner's uncorroborated claim that Keefe affirmatively refused to file a notice of appeal—like the other claims he has made in this proceeding—is not credible. Petitioner has not provided a copy of the letter he allegedly sent to Keefe. Petitioner received a sentence 37 months below the agreed-upon low-end of the Guidelines range, and thus waived any right to appeal. *See Moreta v. United States*, 604 F. Supp. 2d 610, 611 (S.D.N.Y. 2009) (finding attorney's sworn statement that "at no time, before his sentence or thereafter, did Mr. Moreta inform counsel that he wished to appeal his sentence" credible, and observing that "the circumstances surrounding Moreta's sentence—particularly that Moreta's sentence was more than six years below the bottom of the range to which he had stipulated—render Moreta's uncorroborated assertions that he instructed [his attorney] to appeal as highly unlikely"); *Adama v. United States*, No. 01 CIV. 5539 (JSM), 2001 WL 1568809, at *1 (S.D.N.Y. Dec. 7, 2001) ("Petitioner's contention that he received ineffective assistance of counsel because counsel did not file a notice of appeal as requested is directly contradicted by an affidavit from his prior counsel who states that no such request was made. Given the fact that the plea

agreement expressly precluded an appeal because the sentence imposed was below the stipulated guideline range, there is no reason to accept Petitioner's uncorroborated statement that he asked his counsel to file a notice of appeal."). Petitioner has not established that Keefe provided him ineffective assistance of counsel by failing to file a requested notice of appeal.

B. **Actual Innocence**

Petitioner's final claim is that he is actually innocent of having discharged a firearm in furtherance of a drug trafficking crime. (Dkt. 261 at 26).[4] A claim of actual innocence requires a petitioner to show that "in light of new evidence, it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537 (2006) (quotation omitted). A petitioner's "own self-serving affidavit . . . is insufficient to establish actual innocence." *Delva v. United States*, No. 12-CR-802-4 (JMF), 2020 WL 2214801, at *6 (S.D.N.Y. May 7, 2020); *see also Garcia v. Graham,* No. 15CIV1606LTSHBP, 2016 WL 11483852, at *7 (S.D.N.Y. Mar. 15, 2016) ("The first two arguments offered by petitioner in support of his claim of actual innocence . . . are based on nothing more than petitioner's uncorroborated, self-serving statements. . . . As evidence, they lack the probative force necessary to support the conclusion that had this evidence been

---

[4] It is unclear to the Court whether Petitioner is arguing actual innocence in an attempt to overcome a procedural bar or if he is trying to state a freestanding claim of actual innocence. But "the degree of proof required to make out a freestanding claim of innocence (assuming that such a claim is cognizable on habeas corpus even in a noncapital case) exceeds the proof required to establish gateway innocence." *Jimenez v. Stanford*, 96 F.4th 164, 188 (2d Cir. 2024). Petitioner has not come close to satisfying even the gateway innocence standard.

presented, no reasonable juror would have found petitioner guilty beyond a reasonable doubt." (quotation and alteration omitted)), *adopted*, 2016 WL 1718389 (S.D.N.Y. Apr. 29, 2016).

The only evidence Petitioner has submitted in support of his claim of actual innocence is his own self-serving, uncorroborated affidavit. This affidavit is directly contradicted by Petitioner's sworn admissions made during the plea hearing. Petitioner thus plainly has not established actual innocence and is not entitled to relief on this basis.

## CONCLUSION

For the foregoing reasons, Petitioner's § 2255 motion (Dkt. 261) is denied. No certificate of appealability shall issue because Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."). The Clerk of Court is instructed to close Civil Action No. 1:22-cv-00515.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: December 16, 2024
       Rochester, New York